NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-northern judicial district
No. 2021-0270

THE STATE OF NEW HAMPSHIRE

v.

PHILIP PEREZ

Argued: November 17, 2022
Opinion Issued: February 14, 2023

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Sam M. Gonyea, attorney, on the brief and orally), for the State.

Stephanie Hausman, deputy chief appellate defender, of Concord, on the brief and Thomas Barnard, senior assistant appellate defender, of Concord, orally, for the defendant.

DONOVAN, J. The defendant, Philip Perez, appeals his convictions, following a jury trial, of first-degree assault and conduct after an accident. See RSA 631:1, I(b) (Supp. 2022); RSA 264:25 (2014). The defendant argues that the Superior Court (Anderson, J.) erred by excluding evidence pertaining to statements that the victim made to hospital staff two days after the assault. The State counters, in part, that any error associated with the trial court's exclusion of the victim's statements was harmless beyond a reasonable doubt, and, therefore, the defendant's convictions should be affirmed. Based upon the

record before us, we conclude that any error relating to the trial court's decision to exclude the proffered statements was harmless beyond a reasonable doubt. Accordingly, we affirm.

## I. Facts

The jury could have found or the record otherwise supports the following facts. On July 18, 2019, the defendant picked up the victim, who, at the time, was homeless, and who was a friend of the defendant. During the ride, the victim asked the defendant to make a few stops. The defendant protested, which led to a heated argument between the two men inside the car. The argument resulted in a physical altercation during which the victim punched the defendant in the face, causing the defendant's head to hit the driver-side window, drawing blood and breaking his glasses. After punching the defendant, the victim exited the car and walked down the street.

The argument and physical altercation drew the attention of two bystanders who later testified at trial. One witness testified that after the victim exited the car, the defendant sat in the car and appeared to collect himself before pulling back onto the street. Initially the witness believed that the defendant "was taking off," but then the defendant's car "veered in" and hit the victim while he was walking in a crosswalk. Another witness testified that the defendant's car "sped up" when it approached the victim and then "drove over" in his direction prior to making contact. That witness testified that it appeared that the driver "purposely hit" the victim with his car. As a result, the victim, according to one witness, "somersaulted" over the hood of the car. After striking the victim, the defendant's car "sat there" for a moment and then "took off."

The victim was transported to the hospital and the treating physician later testified that the victim's injuries were consistent with being hit by a car. Later that day, the police spoke with the defendant. The defendant explained that after he pulled out onto the road, he wanted to ask the victim why he had punched him. According to the defendant, he spotted the victim walking away and, as he approached the victim from the road, the victim jumped in front of his car, landed on his windshield, and began throwing punches into the car.

The victim remained at the hospital for the next two days. On July 19, a nurse noted in the victim's records, "Problem: Discharge Planning. Goal: Discharge to home or other facility with appropriate resources." The following day, at 10:33 a.m., a physician's assistant noted that "[the victim] appears to claim that he wants to kill himself every time he is told he is ready for discharge." She added, "[He] appears to be malingering." A note from the doctor at 11:59 a.m. that same day states, "[The victim] was requested to be seen prior to discharging." At 4:45 p.m., the victim spoke with a social worker at the hospital. She noted:

Pt became extremely emotional and began sobbing. Pt stated that he has a 'horrible life' and 'no one in his life to help' him and 'no reason to live.' Pt reports if he leaves the hospital today he will throw himself in front of [a] car to 'kill himself.'

The State subsequently charged the defendant with four felony assaults, felony reckless conduct, which were based upon alternate theories, and felony conduct after an accident. Prior to trial, the victim passed away due to unrelated circumstances. The defendant's theory of the case rested upon evidence suggesting that the victim intentionally jumped in front of his car. To that end, the defendant filed a motion in limine to admit the victim's statements to the social worker, made two days after the assault, that if discharged, he would throw himself in front of a car to kill himself. The defendant argued that the statements were probative of the victim's mental state by making "it more likely than not that [the victim] was suicidal at the time of the incident" and thus more likely to have jumped in front of the defendant's car. The defendant further argued that the statements qualified as exceptions to the hearsay rule under the New Hampshire Rules of Evidence as: (1) an excited utterance; (2) a statement of the victim's then-existing condition; and (3) a statement made for medical diagnosis or treatment. See N.H. R. Ev. 803(2)-(4). The State filed its own motion in limine to exclude the statements as hearsay, as well as an objection to the defendant's motion in limine. The State argued that the statements were hearsay without an exception and, alternatively, that the statements should be excluded as inadmissible propensity evidence under Rule 404.

The trial court denied the defendant's motion, ruling that the victim's statements to the social worker were hearsay not subject to the identified exceptions. The court found that being discharged from a hospital "is not normally a 'startling event or condition,'" and thus, the excited utterance exception did not apply. Further, the court found that the "problem with the other two rules is the report that [the victim] was malingering with respect to discharge." The court explained that the victim's statements were "inherently unreliable," thus undermining the applicability of any of the three exceptions to the rule against hearsay posited by the defendant. Ultimately, the court concluded that: "If [the hospital] staff did not believe [the victim's] statements concerning what he would do to himself if discharged when they were in the same room with him, this Court cannot ask a jury to do so based on an assumption that the statements are inherently reliable."

A jury convicted the defendant on four charges. The court sentenced the defendant to one to three years in prison, stand committed for the first-degree assault conviction, and three to six years in prison, suspended for five years upon release for the conduct-after-an-accident conviction. This appeal followed.

II. Analysis

On appeal, the parties agree that the victim's statements to the social worker were hearsay. See N.H. R. Ev. 801(c). Nevertheless, the defendant maintains that the trial court erred when it denied the defendant's motion because the statements fall within three separate exceptions to the New Hampshire Rules of Evidence barring hearsay: an excited utterance, Rule 803(2); a statement of then-existing mental state, Rule 803(3); and a statement made for medical diagnosis or treatment, Rule 803(4). N.H. R. Ev. 803(2)-(4). We need not decide whether the trial court's rulings were erroneous because we agree with the State that any error in excluding the challenged statements was harmless beyond a reasonable doubt.

To establish harmless error, the State must prove beyond a reasonable doubt that the error did not affect the verdict. State v. Racette, 175 N.H. 132, 137 (2022). This standard applies to both the erroneous admission and exclusion of evidence. Id. An error may be harmless beyond a reasonable doubt if: (1) the other evidence of the defendant's guilt is of an overwhelming nature, quantity, or weight; or (2) the evidence that was improperly admitted or excluded is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt. Id. We review these factors to determine whether an error affected a verdict. Id. Either factor can be a basis supporting a finding of harmless error beyond a reasonable doubt. Id. In making this determination, we consider the alternative evidence presented at trial as well as the character of the erroneously admitted or excluded evidence itself. State v. Papillon, 173 N.H. 13, 29 (2020).

To convict the defendant of first-degree assault, the State was required to prove that the defendant "[p]urposely or knowingly cause[d] bodily injury to another by means of a deadly weapon," in this instance a motor vehicle. See RSA 631:1, I(b). At trial, the defendant did not dispute the underlying conduct that he hit the victim with his car. Rather, the defendant claimed that he did not do so purposely or knowingly because the victim jumped in front of his car.

We conclude, based upon a review of the record, that the other evidence of the defendant's guilt is of an overwhelming nature and the evidence that was excluded is inconsequential in relation to the strength of the State's evidence of guilt. Two witnesses testified to observing conduct consistent with the defendant purposely hitting the victim with his car. One witness testified that after the defendant pulled back on the road and began to drive away, the defendant "veered in" towards the victim and "clipped" him in the crosswalk. The other witness testified that the defendant "sped up" at the sight of the victim and then "drove over" in his direction prior to making contact, leading that witness to conclude that the defendant "purposely hit" the victim with his car. Neither witness who observed the collision corroborated the defendant's claim that the victim jumped in front of his car.

4

In addition, both witnesses testified to observing the defendant drive away within seconds after striking the victim with his car — conduct supporting a consciousness of guilt and inconsistent with someone who had accidentally hit a person with his or her car. Against this backdrop, there was overwhelming evidence that the defendant purposely hit the victim with his car. Compared to the substantial strength of the evidence of the defendant's guilt, the exclusion of the victim's statements — made two days after the assault — was inconsequential. Accordingly, we conclude that the State has met its burden of proving that any error in excluding the victim's statements to the social worker did not affect the verdicts and was, therefore, harmless beyond a reasonable doubt. See Papillon, 173 N.H. at 30.

### III. Conclusion

For the foregoing reasons, we affirm the defendant's convictions. Any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived. State v. Bazinet, 170 N.H. 680, 688 (2018).

Affirmed.

HICKS, BASSETT, and HANTZ MARCONI, JJ., concurred; HOURAN, J., retired superior court justice, specially assigned under RSA 490:3, concurred.